1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   SOUTHERN DISTRICT OF CALIFORNIA
10   STACEY BUCHHOLTZ,                    Civil No.   12-cv-2167-BEN (DHB)
11                         Plaintiff,
                                         **ORDER RESOLVING JOINT**
12        v.                             **MOTIONS FOR**
                                         **DETERMINATION OF**
13   ROGERS BENEFIT GROUP, INC.,         **DISCOVERY DISPUTES**
14                        Defendant.     **[ECF No. 14]**
15

16        On April 3, 2013, Plaintiff Stacey Buchholtz and Defendant Rogers Benefit Group,
17   Inc. ("RBG") filed a document entitled "Joint Motions for Determination of Discovery
18   Disputes: 1) Responses to Document Request; 2) Compliance With Subpoena; 3) Responses
19   to Deposition Questions; and 4) Quash Subpoena for Psychological Records."  (ECF No.
20   14.)  The parties request the Court's assistance in resolving several discovery issues that have
21   arisen among them that have not been resolved despite diligent meet and confer efforts.

22        After a thorough review of the parties' arguments and evidence, the Court issues the
23   following Order to resolve the issues in dispute.

24                      **I.  PLAINTIFF'S ALLEGATIONS**

25        Plaintiff was employed by RBG as a Regional Sales Manager from February 2008 to
26   August 5, 2011.  (Compl., at ¶ 5; ECF No. 1-2.)  She was hired at RBG with the promise that
27   she would be promoted to manager of RGB's San Diego office.  (*Id.*)  Prior to working at
28   RBG, Plaintiff worked for and was highly compensated by Warner Pacific Insurance

Services, Inc. ("Warner Pacific"). (*Id.* at ¶ 6.) In January and February 2008, Dennis Sullivan, manager of RBG's San Diego office, approached Plaintiff and asked her to end her employment with Warner Pacific and instead work for RBG. (*Id.* at ¶ 7.) In order to induce Plaintiff to join RBG, Sullivan assured Plaintiff, both verbally and in writing, that she would be promoted to the position of manager in 2010. (*Id.* at ¶¶ 12-13.) Sullivan also set forth in writing the level of financial compensation that Plaintiff would receive during the years 2011 through 2014 after being promoted to manager in 2010. (*Id.* at ¶ 12.)

Sullivan's representations to Plaintiff were made in order to allow Sullivan and RBG to "avail themselves of Plaintiff's outstanding reputation, talents, and skills and reap the economic benefits thereof," including allowing Sullivan and RBG to "take over, and convert to their own control and for their own financial benefit, the broker relationships that Plaintiff had cultivated [while with Warner Pacific] and from which existing broker relationships Plaintiff derived substantial economic benefit." (*Id.* at ¶¶ 8-9.) However, Sullivan and RBG intentionally failed to disclose that RBG would not elevate Plaintiff to manager, that Sullivan did not intend to retire, and that even if Sullivan did retire Plaintiff would not be promoted to manager. (*Id.* at ¶ 10.)

As a result of the verbal and written representations made by Sullivan, Plaintiff ultimately agreed to leave Warner Pacific and begin working with RBG. (*Id.* at ¶ 13.) Plaintiff was also induced to transfer her existing broker relationships from Warner Pacific to RBG. (*Id.*) Plaintiff's performance for RBG was "exemplary in that [she] exceeded all sales expectations, exceeded all sales records for RBG San Diego, and grossed over $14.5 million in sales each year, 2008 and 2009." (*Id.* at ¶ 14.)

While employed by RBG, Plaintiff earned an annual salary and guaranteed bonus in excess of $176,549, plus benefits including twenty-one days of paid vacation per year. (*Id.* at ¶ 15.) Plaintiff accrued a total of eighty-four days of vacation while employed with RBG. (*Id.*)

The parties initially acted in accordance with the promised expectation that Plaintiff would be promoted to manager, as demonstrated by RBG giving Plaintiff the largest office

12cv2167-BEN (DHB)

available, giving her the title of Special Representative (as opposed to other salespeople referred to as Field Representatives) and Plaintiff assuming managerial duties including overseeing others in the workplace, instituting policies and methods governing and tracking vacation time, purchasing office furniture, assuming expenditures in excess of $13,094.91 and recruiting a salesperson (*i.e.*, Melissa Medve) of her own caliber and talent to replace her presence on the sales team.  (*Id.* at ¶¶ 16-20.)  In addition, RBG ordered and authorized the transfer of each of Plaintiff's twenty-nine broker relationships to Medve "leaving Plaintiff with just a handful of marginally productive broker relationships."  (*Id.* at ¶ 21.)

Subsequent to the transfer of Plaintiff's broker relationships to Medve, RBG broke its promise of promoting Plaintiff to manager, and RBG refused to compensate Plaintiff the amount promised for the years 2011 through 2014.  (*Id.* at ¶¶ 22-23.)  RBG also refused to transfer the broker relationships back to Plaintiff, despite her requests so that she could continue to have an income.  (*Id.* at ¶¶ 24-25.)  RBG staff, particularly Sullivan, criticized Plaintiff's lack of earnings, openly mocked Plaintiff and subjected Plaintiff to humiliation and demeaning criticism.  (*Id.* at ¶ 26.)  RBG refused to fully reimburse Plaintiff for the $13,094.91 she expended on office furniture and other items.  (*Id.* at ¶ 27.)

On August 5, 2011, RBG terminated Plaintiff after Sullivan presented her with a spreadsheet demonstrating that her earnings exceeded her sales, which was the result of RBG and Sullivan having converted Plaintiff's broker relationships and refusing to promote her to manager.  (*Id.* at ¶ 28.)  Since Plaintiff's termination, RBG has failed to compensate Plaintiff for waiting time penalties or wages earned, including salary, guaranteed bonus and accrued vacation days.  (*Id.* at ¶¶ 29-30.)

## II. DISCUSSION

The parties filed their joint motion requesting the Court's assistance in resolving four discovery disputes: (1) whether RBG should be compelled to provide supplemental responses to Plaintiff's Request for Production of Documents Nos. 9-14 and 16-19; (2) whether the Court should quash Plaintiff's subpoena to Sullivan seeking his financial and retirement account records; (3) whether Sullivan should be compelled to provide deposition

1  testimony concerning the condition of his financial and retirement accounts; and (4) whether

2  the Court should quash RBG's subpoena to Plaintiff's psychotherapist seeking Plaintiff's

3  psychological records.

4  **A.    Requests for Production of Documents**

5  　　　　The parties represent that there exists "disagreements as to . . . RBG's assertion of

6  objections and partial noncompliance with Plaintiff's" Requests for Production of

7  Documents. (ECF No. 14 at 8:9-11.)[1] In conjunction with their joint motion the parties filed

8  a chart showing the discovery issues in dispute, including the Requests for Production of

9  Documents. (ECF No. 14-16.)  That document contains Plaintiff's requests and RBG's

10  responses and objections to Request Nos. 9-14 and 16-19. (*Id.* at 1-5.) However, the parties'

11  joint motion does not include a discussion of the parties' respective positions about these

12  Requests.  Rather, the only discussion about Plaintiff's Requests is Plaintiff's discussion

13  about Request No. 14 (ECF No. 14 at 9:21-11:10) and RBG's conclusory statement that it

14  "has produced to Plaintiff the income and expense data for the Carlsbad office and all other

15  RBG offices for the years 2005 through 2012." (*Id.* at 18:10-12.)

16  　　　　Because neither party provided the Court with briefing concerning Request for

17  Production Nos. 9-13 and 16-19, the Court does not address those Requests and will not, at

18  this time, order RBG to supplement its responses or produce documents in response to those

19  Requests.  The parties are encouraged to continue to meet and confer in an effort to resolve

20  these disputes informally taking into account the Court's conclusions herein.  If the parties

21  remain unable to resolve these disputes, they shall file a joint motion for determination of

22  discovery dispute on or before **May 3, 2013**.  The joint motion shall separately address each

23  of the Requests that remain in dispute.

24  　　　　Request No. 14 seeks the following documents: "Copies of any and all records,

25  communications, or other documents or ESI relating to all monies received by RBG from

26  any production attributed to RBG's San Diego office for each year during the period January

27

28  　　　　[1] Page numbers for docketed materials cited in this Order refer to those imprinted by the Court's electronic case filing system.

4                                    12cv2167-BEN (DHB)

1, 2005 through the present." (ECF No. 14-16 at 2.)  RBG responded to Request No. 14 as follows: "RBG objects to this Request on the grounds that it is irrelevant to the issues in this lawsuit, is not reasonably calculated to lead to the discovery of admissible evidence, violates RBG's right to financial privacy, and it is overbroad and unduly burdensome.  RBG also objects to this Request to the extent that it calls for RBG's confidential and proprietary financial information." (*Id.* at 2-3.)

Plaintiff contends that income generated by RBG's San Diego branch is relevant because: (1) her alleged promised compensation was based, at least in part, on the San Diego branch's income; and (2) RBG's income is necessary to calculate the value of restitution or disgorgement of profits based on RBG's alleged wrongful interference with Plaintiff's broker relationships. (ECF No. 14 at 9:21-11:10.)

Litigants "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1).  In addition, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*  The relevance standard is thus commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).  However broadly defined, relevancy is not without "ultimate and necessary boundaries." *Hickman*, 329 U.S. at 507.  Accordingly, district courts have broad discretion to determine relevancy for discovery purposes. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

Here, the Court agrees with Plaintiff that the documents sought by Request No. 14 are relevant to Plaintiff's claims.  RBG's objection that the request is overbroad and unduly burdensome are unpersuasive.  Request No. 14 specifically seeks documents demonstrating RBG's income or "monies received" by the San Diego branch from January 1, 2005 through the present.  The Court finds the requested time period appropriate.  The years in which

Plaintiff was employed by RBG are clearly relevant, and the several years prior to her employment with RBG are also relevant in that Plaintiff may seek to compare RBG's income before and after her broker relationships were transferred to RBG. The time period from Plaintiff's August 2011 termination to the present is also relevant for the same reason given that RBG maintains Plaintiff's prior broker relationships. Further, RBG has made no showing that compliance with this Request is unduly burdensome. In fact, RBG argues that it has already produced the "income and expense data" for the relevant time period. (ECF No. 14 at 18:10-12.)

With respect to RBG's financial privacy objection, the Court finds that RBG's interest in maintaining the confidentiality of its financial information can be appropriately protected by the Protective Order that has been entered in this action. (*See* ECF No. 6.)

Accordingly, RBG's objections to Request for Production No. 14 are **OVERRULED** and Plaintiff's request that RBG be compelled to produce documents in response to this Request is **GRANTED**. To the extent it has not already done so, RBG shall produce to Plaintiff all documents responsive to Request for Production No. 14 on or before **May 3, 2013**.

**B.    Subpoena to Sullivan**

Plaintiff seeks an order compelling Sullivan, a non-party to this action, to comply with a subpoena requiring the production of documents concerning Sullivan's financial and retirement account information. (ECF No. 14 at 11:11-12:3; ECF No. 14-6.)[2]  Plaintiff

---

[2] Plaintiff's subpoena to Sullivan demands production of the following:

1) All document and writings (within the meaning of Federal Rules of Evidence 1001) and Electronically Stored Information (within the meaning of []Federal Rule of Civil Procedure 34(a)(1)(A)) relating to your total financial condition for each month during the period January 1, 2007 through the present, including but not limited to all assets, liabilities, retirement savings, and all other documents, data, or things that materially affected your total financial condition during that period, or for any part of it without limitation.

2) All documents and writings (within the meaning of Federal Rules of Evidence 1001) and Electronically Stored Information (within the meaning of []Federal Rule of Civil Procedure 34(a)(1)(A)) relating to your retirement planning, retirement savings, or communications relating to any intention or

contends this information is relevant to Sullivan's intent at the time he induced Plaintiff to join RBG in 2008, specifically whether Sullivan intended to retire in 2010 and whether his personal financial situation was adequate at that time to support a 2010 retirement. (ECF No. 14 at 11:11-12:3.) Plaintiff disputes Sullivan's position that the documents constitute private financial information that should not be disclosed. (*Id.* at 12:4-19.) Plaintiff contends there is a compelling need for the production of these records because there is no alternative manner of discovering information regarding Sullivan's retirement plans, financial status and motives for making certain promises to induce Plaintiff to join RBG. (*Id.*)

RBG and Sullivan[3] contend that Plaintiff's subpoena to Sullivan should be quashed because it invades Sullivan's privacy by requiring disclosure of personal income and retirement planning information. (*Id.* at 18:10-18, 20:18-23:20.) RBG and Sullivan further contend that the requested documents are not relevant to this litigation or reasonably calculated to lead to the discovery of admissible evidence. (*Id.*)

The Court agrees with Plaintiff that the records sought by her subpoena to Plaintiff are relevant or, at a minimum, reasonably calculated to lead to the discovery of admissible evidence. However, relevancy alone is not sufficient when disclosure of the subpoenaed documents would invade a non-party's privacy. The California Supreme Court has recognized that California's constitutional right of privacy (*see* CAL. CONST., art. I, § 1) "extends to one's confidential financial affairs as well as to the details of one's personal life." *Valley Bank of Nev. v. Superior Court*, 15 Cal. 3d 652, 656 (Cal. 1975). However, "[t]he constitutional right of privacy does not provide absolute protection against disclosure of personal information; rather it must be balanced against the countervailing public interests in disclosure." *Hooser v. Superior Court*, 84 Cal. App. 4th 997, 1004 (Cal. Ct. App. 2000) (citing *Vinson v. Superior Court*, 43 Cal. 3d 833, 842 (Cal. 1987)). "In determining whether

consideration of retirement during the period January 1, 2005 through December 31, 2010.

(ECF No. 14-6 at 4.)

[3] Counsel for RBG also represent non-party Sullivan in connection with his objections to Plaintiff's subpoena.

disclosure is required, the court must indulge in a 'careful balancing' of the right of a civil litigant to discover relevant facts, on the one hand, and the right of the third parties to maintain reasonable privacy regarding their sensitive personal affairs, on the other." *Id.* (citing *Schnabel v. Superior Court*, 5 Cal. 4th 704, 712 (Cal. 1993)).  "The court must consider the purpose of the information sought, the effect that disclosure will have on the affected persons and parties, the nature of the objections urged by the party resisting disclosure and availability of alternative, less intrusive means for obtaining the requested information." *Id.* (citing *Valley Bank*, 15 Cal. 3d at 657-58).  "Based on an application of these facts, the more sensitive the nature of the personal information that is sought to be discovered, the more substantial the showing of the need for the discovery that will be required before disclosure will be permitted." *Id.* (citing *Johnson v. Superior Court*, 80 Cal. App. 4th 1050, 1070 (Cal. Ct. App. 2000); *Hinshaw, Winkler, Draa, Marsh & Still v. Superior Court*, 51 Cal. App. 4th 233, 237 (Cal. Ct. App. 1996)).

In the instant case, the Court finds that records disclosing Sullivan's financial condition and retirement planning and accounts are protected under the California Constitution's right to privacy.  However, documents or communications that simply evidence Sullivan's intent to retire (without disclosing his financial condition or account information) are not. For example, Sullivan's banking and retirement account statements are protected, but a hypothetical correspondence to a superior at RBG indicting his intent to retire would not be.

The Court further finds that Sullivan's right to keep his financial and retirement account information private outweighs Plaintiff's need for the information.  The Court believes that, although relevant, the likelihood that disclosure of Sullivan's financial and retirement account information would lead to admissible evidence is remote.  Indeed, any claim by Plaintiff that Sullivan's financial status was not adequate to retire in 2010 is speculative, particularly because the amount of resources necessary to support retirement varies widely from person to person.  Accordingly, because disclosure of Sullivan's financial and retirement account information would invade his right to privacy under the California

1    Constitution, and because such information is sought to pursue a speculative argument, the
2    Court believes that Sullivan's interest in maintaining the privacy of these records outweighs
3    Plaintiff's need for the records.

4           Moreover, Plaintiff is not left without alternative, less intrusive means to inquire into
5    Sullivan's intent regarding whether he planned to retire in 2010.  As noted above, Sullivan
6    is not entitled to withhold documents or communications relating to his plans or intent to
7    retire, if they exist, although any portions of those documents also containing financial
8    account information may be redacted.  Further, Plaintiff has already questioned Sullivan
9    regarding his plans or intent to retire.  (*See, e.g.*, ECF No. 14-11 at 10-12.)  The fact that
10   Sullivan's testimony did not support Plaintiff's allegations in this case does not justify
11   Plaintiff's attempt to delve into Sullivan's personal financial information.  Finally, Plaintiff
12   is not precluded from seeking testimony from other witnesses concerning Sullivan's alleged
13   intent to retire in 2010 and his alleged representations to Plaintiff of that intent.

14          Based on the above discussion, and pursuant to Federal Rule of Civil Procedure
15   45(c)(3)(A)(iii)[4], the Court **MODIFIES** Plaintiff's subpoena in that Sullivan is only required
16   to produce documents and electronically stored information evidencing his intent to retire,
17   if such documents exist and have not already been produced.  To the extent such documents
18   also disclose Sullivan's financial condition or account information, such information may
19   be redacted prior to production.  Sullivan shall produce responsive documents on or before
20   **May 3, 2013**.

21   **C.    Sullivan's Deposition Testimony**

22          Plaintiff also seeks an order compelling Sullivan to respond to deposition questions
23   concerning his financial and retirement information.  Specifically, Plaintiff "seeks an order
24   requiring Mr. Sullivan to provide testimony as to his own retirement information and as to
25   RBG's financial information without limitation." (ECF No. 14 at 13:1-3.)  However, for the
26   reasons stated above, Plaintiff's motion to compel further deposition testimony from Sullivan

27
28          [4] Rule 45(c)(3)(A)(iii) provides that "[o]n timely motion, the . . . court *must* quash
     or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected
     matter, if no exception or waiver applies."  (Emphasis added.)

1  is **DENIED**.

2  **D.    Subpoena to Psychotherapist**

3        Finally, Plaintiff seeks to quash RBG's subpoena to her psychotherapist, Dr. Keith

4  Auerbach.  The subpoena seeks production of Dr. Auerbach's records related to Plaintiff's

5  consultations with Dr. Auerbach and any drugs, therapies or treatments he administered to

6  Plaintiff, documents demonstrating Plaintiff's psychiatric history, Dr. Auerbach's

7  observation notes and any documents reflecting communications Dr. Auerbach had with

8  Plaintiff or with a third party about Plaintiff.  (ECF No. 14-9 at 5:21-6:5.)

9        **1.    Parties' Positions**

10        Plaintiff contends that RBG's subpoena to Dr. Auerbach should be quashed because

11  (1) the psychotherapist-patient privilege protects against disclosure of psychological records;

12  (2) the subpoena is overbroad; (3) the records sought are not directly relevant inasmuch as

13  Plaintiff has withdrawn her claim for emotional distress[5] damages; and (4) RBG cannot

14  demonstrate a compelling public need for the disclosure of the records that outweighs

15  Plaintiff's right to privacy.  (ECF No. 14 at 13:4-16:28.)  Plaintiff also argues that in the

16  event the Court is not inclined to quash the subpoena, the Court should review her

17  psychological records *in camera* prior to ordering disclosure.  (*Id.* at 17:18-18:6.)

18        RBG contends that although Plaintiff has withdrawn her claim for emotional distress

19  damages, RBG is nevertheless entitled to discover Dr. Auerbach's records because they are

20  relevant in that they will reflect whether Plaintiff "was complaining [to Dr. Auerbach] at the

21  time about not being made manager, not being paid what she was allegedly promised, not

22  'getting her brokers back,' and whether she left RBG voluntarily or involuntarily."  (*Id.* at

23

24        [5] Plaintiff also argues that the subpoena to Dr. Auerbach should be quashed
   because the parties had previously agreed in writing that Plaintiff would only assert
25  "garden variety" emotional distress claims in exchange for RBG agreeing not to require
   Plaintiff to submit to a medical or mental examination.  (ECF No. 14 at 17:1-17.)  RBG
26  contends that this agreement did not amount to RBG waiving its right to conduct other
   discovery into Plaintiff's psychological records.  (*Id.* at 26:17-25.)  However, both parties
27  now agree that Plaintiff has affirmatively withdrawn her claim for emotional distress
   damages.  (*Id.* at 7:8.)  Thus, the Court finds the parties' prior agreement regarding
28  "garden variety" emotional distress claims to be irrelevant to determining whether the
   psychotherapist-patient privilege applies.

12cv2167-BEN (DHB)

23:27-24:6.)

## 2.  __Analysis__

As recognized by the California Supreme Court, California[6] has enacted "a broad, protective psychotherapist-patient privilege" to promote "an environment of confidentiality of treatment [that] is vitally important to the successful operation of psychotherapy." *In re Lifschutz*, 2 Cal. 3d 415, 422 (Cal. 1970).[7]  The psychotherapist-patient privilege provides that a "patient, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist." CAL. EVID. CODE § 1014.  "[A] patient's interest in keeping such confidential revelations from public purview, in retaining this substantial privacy, has deeper roots than the California statute and draws sustenance from our constitutional heritage." *Lifschutz*, 2 Cal. 3d at 431.  Indeed, "the confidentiality of the psychotherapeutic session falls within one" of the "zones of privacy" guaranteed by the Bill of Rights. *Id.* at 431-32 (quoting *Griswold v. Conn.*, 381 U.S. 479, 484 (1965)).

However, "[t]here is no privilege . . . as to a communication relevant to an issue concerning the mental or emotional condition of the patient if such issue has been tendered by . . . [t]he patient." CAL. EVID. CODE § 1016(a).  Moreover, the psychotherapist-patient privilege can also be waived by a patient who, "without coercion, has disclosed a significant part of the [privileged] communication or has consented to such disclosure made by anyone." CAL. EVID. CODE § 912.

/ / /

---

[6] As Plaintiff correctly recognizes (ECF No. 14 at 9:18-20), claims of privilege in this diversity action are governed by California privilege laws. *See* FED. R. EVID. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *Star Editorial, Inc. v. Dist. Court*, 7 F.3d 856, 859 (9th Cir. 1993).

[7] As recognized by the Supreme Court, "all 50 States and the District of Columbia have enacted into law some form of psychotherapist privilege." *Jaffe v. Redmond*, 518 U.S. 1, 12 (1996).  In addition, the privilege is recognized under federal law. *Id.* at 15 (holding "that confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence.").

As stated above, California Evidence Code § 1016(a) sets forth a "patient-litigant exception" to the psychotherapist-patient privilege.

> The patient-litigant exception . . . allows only a limited inquiry into the confidences of the psychotherapist-patient relationship, compelling disclosure of only those matters directly relevant to the nature of the specific "emotional or mental" condition which the patient has voluntarily disclosed and tendered in his pleadings or in answer to discovery inquiries. Furthermore, even when confidential information falls within this exception, trial courts, because of the intimate and potentially embarrassing nature of such communications, may utilize the protective measures at their disposal to avoid unwarranted intrusions into the confidences of the relationship.

*Lifschutz*, 2 Cal. 3d at 431. "[S]ince the exception compels disclosure only in cases in which the patient's own action initiates the exposure, 'intrusion' into a patient's privacy remains essentially under the patient's control." *Id.* at 433. "In interpreting this exception [courts should be] mindful of the justifiable expectations of confidentiality that most individuals seeking psychotherapeutic treatment harbor." *Id.* at 431. If the patient-litigant exception is given too

> broad an effect . . . it might effectively deter many psychotherapeutic patients from instituting any general claim for mental suffering and damage out of fear of opening up all past communications to discovery. This result would clearly be an intolerable and overbroad intrusion into the patient's privacy, not sufficiently limited to the legitimate state interest embodied in the provision and would create an opportunity for harassment and blackmail.

*Id.* at 435. Moreover,

> [i]n light of these considerations, the "automatic" waiver or privilege contemplated by section 1016 must be construed not as a complete waiver of the privilege but only as a limited waiver concomitant with the purposes of the exception. Under section 1016 disclosure can be compelled only with respect to *those mental conditions* the patient-litigant has "[disclosed] . . . by bringing an action in which *they* are in issue.

*Id.* (quoting *City & Cnty. of San Francisco v. Superior Court*, 37 Cal. 2d 227, 232 (Cal. 1951)).

> [C]ommunications which are not directly relevant to those specific conditions do not fall within the terms of section 1016's exception and therefore remain privileged. Disclosure cannot be compelled with respect to other aspects of the patient-litigant's personality even though they may, in some sense, be 'relevant' to the substantive issues of litigation. The patient thus is not obligated to sacrifice all privacy to seek redress for a specific mental or emotional injury; the scope of the inquiry permitted depends upon the nature of the injuries which

1    the patient-litigant himself has brought before the court.

2    *Id.* at 435; *see also Roberts v. Superior Court*, 9 Cal. 3d 330, 339 (Cal. 1973) ("[W]here

3    there is no specific mental condition of the patient at issue, and discovery of the privileged

4    communications is sought merely upon speculation that there may be a 'connection' between

5    the patient's past psychiatric treatment and some 'mental component' of his present injury,

6    those communications should remain protected by the [psychotherapist-patient] privilege.").

7         Finally, "[e]ven when the confidential communication is directly relevant to a mental

8    condition tendered by the patient, and is therefore not privileged, the codes provide a variety

9    of protections that remain available to aid in safeguarding the privacy of the patient."

10   *Lifschutz*, 2 Cal. 3d at 437. For example, "the patient . . . may apply to the trial court for a

11   protective order to limit the scope of the inquiry or to regulate the procedure of the inquiry

12   so as to best preserve the rights of the patient." *Id.* "[I]n general, the statutory

13   psychotherapist-patient privilege 'is to be liberally construed in favor of the patient.'"

14   *Lifschutz*, 2 Cal. 3d at 437 (quoting *Newell v. Newell*, 146 Cal. App. 2d 166, 177 (Cal. Ct.

15   App. 1956)).

16        Here, any confidential communications between Dr. Auerbach and Plaintiff clearly

17   fall within the ambit of California's psychotherapist-patient privilege. The question before

18   the Court is whether the patient-litigant exception applies. Whether Plaintiff has waived the

19   privilege is complicated by the fact that she initially sought to recover for emotional distress

20   damages. The Court has found no prior case addressing a situation analogous to the one

21   presented here, where initial emotional distress claims have been affirmatively withdrawn.

22   However, in recognition of the policy considerations supporting the privilege, including the

23   general recognition that the privilege should be applied liberally in favor of the patient, the

24   Court finds that because Plaintiff has affirmatively withdrawn her intent to pursue her

25   emotional distress claims there is presently no waiver of the privilege. Indeed, "there is no

26   specific mental condition of the patient at issue." *Roberts*, 9 Cal. 3d at 339.

27        RBG's argument that the communications between Dr. Auerbach and Plaintiff are

28   relevant is unpersuasive. Clearly, such communications would be relevant to the extent they

encompassed discussions about Plaintiff not being made manager, her employment with and salary from RBG and the reasons why she was no longer employed by RBG.  However, relevancy alone is insufficient when a privilege applies.   To hold that a privileged confidential communication should be disclosed in discovery simply because it is relevant to the issues in dispute would essentially ameliorate the psychotherapist-patient privilege.[8]

The Court further concludes that any documents that RBG seeks from Dr. Auerbach beyond confidential communications (*e.g.*, consultation notes, treatment information and communications with third parties about Plaintiff) are likely no longer relevant in this case and should not be produced.  To the extent such other documents are relevant in that they go beyond Plaintiff's mental condition by disclosing Plaintiff's statements about her work with RBG, the Court concludes that such documents should not be produced in order to protect Plaintiff from "annoyance, embarrassment, [and] oppression."  FED. R. CIV. P. 26(c)(1).

Accordingly, Plaintiff's motion to quash RBG's subpoena to Dr. Auerbach is **GRANTED**.

### III.  CONCLUSION

For the reasons discussed above, IT IS HEREBY ORDERED:

1.     The parties shall file a joint motion for determination of discovery dispute concerning any remaining disputes regarding Plaintiff's Request for Production of Documents Nos. 9-13 and 16-19 shall be filed on or before **May 3, 2013**.

2.     RBG's objections to Plaintiff's Request for Production of Documents No. 14 are **OVERRULED** and Plaintiff's request that RBG be compelled to produce documents in response to this Request is **GRANTED**.

---

[8] A more compelling argument that RBG does not make is that because Plaintiff initially placed her mental condition at issue by asserting claims for emotional distress damages Plaintiff waived the privilege and that her subsequent withdrawal of the emotional distress claims does not revive the privilege.  While there is some merit to this argument, the Court believes that in the instant case it would be inappropriate to find that a waiver of the privilege cannot be revived, especially in light of the fact that the confidential communications have not been disclosed but have remained confidential.  Further, to hold otherwise could create problems when the initial emotional distress allegation is contained only in a complaint prepared by counsel, and a particular plaintiff may not understand at the outset of the litigation the effect that such a claim might later have on confidential psychiatric communications.

12cv2167-BEN (DHB)

3.     Plaintiff's subpoena to non-party witness Dennis Sullivan is **MODIFIED** as set forth above.  Sullivan shall produce responsive documents in compliance with the above discussion, to the extent such documents exist, on or before **May 3, 2013**.

4.     Plaintiff's motion to compel further deposition testimony from Sullivan is **DENIED**.

5.     Plaintiff's motion to quash RBG's subpoena to Dr. Keith Auerbach is **GRANTED**.

**IT IS SO ORDERED.**

DATED:  April 18, 2013

DAVID H. BARTICK
United States Magistrate Judge

15

12cv2167-BEN (DHB)